UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:21-cr-00069-SRC |
| CORTEZ WHITE, | ) ) ) |
| Defendant. | ) |

## Order

Defendant Cortez White moves to suppress all evidence seized and statements made during an encounter with police. White claims that the officers violated his Fourth, Fifth, and Fourteenth Amendment rights by not having reasonable suspicion to support a *Terry* stop and by failing to administer *Miranda* warnings. The magistrate judge prepared a report and recommendation, and the Court now considers White's objections to the R&R. On de novo review, the Court adopts the findings of fact set forth in the R&R and overrules White's objections.

### I.    Factual background

As noted, the Court adopts the findings of fact set forth in the R&R and provides this summary for context. Around midday on November 1, 2020, the St. Charles County Police received an anonymous call regarding a peace disturbance in a trailer park near the intersection of Northwoods and Hickory. Evid. Tr. at 7:14–10:4, 28:4–11, 30:2–3. The caller reported that two people—a white male and black male—were fighting and that one person produced a firearm. *Id.* at 8:9–17, 28:4–7. Both Sergeant Josh Davis and Corporal Michael Livia responded to the area, with Sgt. Davis arriving first. *Id.* at 8:23–9:25, 29:1–7. Both officers

were driving marked patrol vehicles, and both wore police uniforms. *Id.* at 26:1–6, 32:21–33:1. The weather was clear and sunny that day. *Id.* at 10:1–5, 30:4–7.

Sgt. Davis testified that dispatch reported that the subject who reportedly had a firearm was a black male, wearing a dark shirt and blue jeans. *Id.* at 8:9–12, 28:9–11. While Sgt. Davis was enroute, dispatch reported that the subject was named Cortez White and supplied a Department of Revenue photo. *Id.* at 8:13–22, 16:11–13. Sgt. Davis testified that it took him less than ten minutes to arrive after first receiving the dispatch. *Id.* at 16:21–17:4 When Sgt. Davis arrived at the area of the reported fight, he found nobody present. *Id.* at 8:23–9:7, 10:6–19. He canvassed around the area and saw nobody matching the description, so he returned to the initial area reported and saw Cortez White, who was walking down Hickory Street. *Id.* According to Sgt. Davis, White "match[ed] the description to a T." *Id.* at 10:13–19. Upon first encountering White, Sgt. Davis pulled alongside of him and spoke to him through the passenger side window of his patrol vehicle. *Id.* at 10:23–11:16. Near the outset of their encounter, Sgt. Davis directly asked White if he had a pistol on him. *Id.* at 10:11–19. White responded that he did, in fact, have a pistol. *Id.* at 10:21–22. Sgt. Davis described White's demeanor as extremely friendly and polite and that he was taken "off guard" by White's candid response. *Id.*

Shortly after Sgt. Davis began his encounter with White, Cpl. Livia arrived at the scene. *Id.* at 12:15–21. Sgt. Davis testified that he had already exited his patrol vehicle when Cpl. Livia arrived. *Id.* at 19:21–20:5, 25:1–5. After White acknowledged possessing a firearm, Sgt. Davis conducted a pat-down search of White and recovered a .380 caliber Ruger LCP firearm. *Id.* at 12:15–25, 31:8–20. Cpl. Livia observed the pat-down and took possession of the gun and rendered it safe. *Id.* at 20:19–21:6, 24:17–25:5, 31:8–24. The officers did not restrain or place White in handcuffs at this point. *Id.* at 21:7–14, 32:10–20. Cpl. Livia explained that White

was not restrained because the officers were still trying to figure out what happened and only had "one side of this possible assault." *Id.*   Cpl. Livia described White as "very cooperative" with the officers but "confused" by why the officers were even present.  *Id.* at 35:24–36:3.  At no time did the officers draw their weapons.

Both officers testified that White told them that the gun was not his and that he was returning it to a friend.  *Id.* at 23:6–24:1, 39:15–25.  Cpl. Livia testified that White made this statement shortly after the gun was discovered and before White was arrested.  *Id.* 44:12–45:1.

After taking possession of the gun, Cpl. Livia conducted a record check of White and learned that there was a felony warrant for his arrest and that he was a convicted felon.  *Id.* at 33:8–14.  Cpl. Livia testified that he placed White under arrest as a result of the information he learned during the record check.  *Id.*  Cpl. Livia explained that, even if White did not have a firearm, he would have been arrested on the felony warrant, and that White would have been searched before he was placed in the patrol car for transport to the station.  *Id.* at 36: 19–13. Cpl. Livia testified that he placed White in the back of his patrol vehicle and did not Mirandize White because he did not intend to question White.  *Id.* at 33:22–25.  Sgt. Davis likewise did not provide *Miranda* warnings to White.  *Id.* at 13:18–19, 33:22–25.

The officers testified that they never found any indication that a fight actually occurred. *Id.* at 22:1–10, 34:1–18.  Cpl. Livia testified that, at some point he went to the trailer/residence that White mentioned and spoke to occupants who advised that they were unaware of any fight. *Id.* at 34:3–7.

## II. Procedural background

In January 2021, a federal grand jury returned a one-count indictment, charging White with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Docs. 1–2. In December 2021, White filed a Motion to Suppress Statements, seeking "to suppress all alleged statements, oral, writing, videotaped, or otherwise recorded, which the [United States] intends to use in evidence against [White]," and a Motion to Suppress Evidence, seeking to suppress physical evidence, including by not limited to a ".380 caliber Luger firearm, ammunition and [a] magazine." Docs. 30–31. The Court referred White's motions to United States Magistrate Judge John M. Bodenhausen. *See* 28 U.S.C. § 636(b). After holding an evidentiary hearing and ordering post-hearing briefing, Judge Bodenhausen issued a Report and Recommendation detailing his factual findings, legal conclusions, and recommendations on White's motions. Doc. 52; *see also* Docs. 30–31, 34, 44, 48, 50. The R&R recommends that the Court deny both of White's motions. Doc. 52 at p. 10. White timely filed objections to the R&R. Doc. 54.

## III. Standard

When a party objects to a magistrate judge's report and recommendation, the district judge must conduct a de novo review of the portions of the report, findings, or recommendations to which the party objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)). In making its de novo determination, the Court

4

reviewed the entire record, including the transcript of the June 7, 2022, evidentiary hearing.  *See* Docs. 30–31, 34, 44, 48, 50, 52, 54.

## IV. Discussion

### A. Findings of fact

White does not specifically object to the findings of fact in the R&R; White's objections thus do not comply with the specificity requirement of the law.  *See* 28 U.S.C. § 636(b)(1); *Lothridge*, 324 F.3d at 600.  Nonetheless, the Court has conducted a de novo review and finds that Judge Bodenhausen has accurately set forth the facts supported by the record.  Accordingly, the Court adopts, incorporates, and sustains all findings of fact as set forth in Judge Bodenhausen's R&R, Doc. 52.

### B. Conclusions of law

White objects to Judge Bodenhausen's findings that seizure of the firearm was lawful and that the statements White made to officers are admissible.  Doc. 54.

#### 1. Lawful seizure

White maintains that seizure of his firearm was unlawful because he was not visibly engaged in any criminal activity that would have warranted his detention, that his detention was based on an anonymous tip that proved false, and that the officers did not have reasonable suspicion to stop and question White.  Doc. 54 at ¶ 1.  On de novo review, the Court finds that Judge Bodenhausen, having credited Sgt. Davis's and Cpl. Livia's testimony, correctly found that at the time of the pat-down, Sgt. Davis had reasonable suspicion to believe that White may have been involved in a fight and was armed.  As such, Sgt. Davis's pat-down of White was justified by probable cause.  Thus, the Court overrules White's objection.

5

### 2. Admissible statements

White maintains that his statements are inadmissible because he was not immediately advised of his *Miranda* rights.   Doc. 54 at ¶ 2.   On de novo review, the Court finds that Judge Bodenhausen, having credited Sgt. Davis's testimony, correctly found that White was not entitled to *Miranda* warnings at the time he made the statements in question.   As such, the Court overrules White's objection.

## V. Conclusion

The Court sustains, adopts, and incorporates United States Magistrate Judge Bodenhausen's [52] Report and Recommendation and denies Defendant Cortez White's [30] Motion to Suppress Statements and [31] Motion to Suppress Evidence.

Trial remains set for September 12, 2022 at 9:00 a.m. in Courtroom 14-North.

So Ordered this 24th day of August 2022.

                                             */s/ Stephen R. Clark*
                                             STEPHEN R. CLARK
                                             UNITED STATES DISTRICT JUDGE